# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

GARY WAYNE RUSSELL, )
)
Plaintiff, )
)
vs. ) Case No. CIV-09-435-JHP-SPS
)
BILLY RAY CARROLL, )
)
Defendant. )

## OPINION AND ORDER

This is a 42 U.S.C. § 1983 civil rights action filed by Plaintiff Gary Wayne Russell, an in-patient resident at a mental health hospital in Vinita, Oklahoma appearing *pro se*. Before the Court is the motion for summary judgment filed by Defendant Billy Ray Carroll (Dkt. # 37). Plaintiff filed a response to said motion (Dkt. 40). Defendant Carroll filed a Reply (Dkt. 41). Thereafter, Plaintiff filed a Surreply (Dkt 42). For the reasons set forth below, the Court finds that Defendant Carroll is entitled to summary judgment and his motion shall be granted.

### *BACKGROUND*

On November 12, 2009, when Plaintiff filed his complaint, he was being housed in a mental health hospital in Vinita, Oklahoma. Plaintiff states that he was transferred from the facility in Vinita, Oklahoma, to the McCurtain County Jail ("MCJ") on May 10, 2009. *See*, Dkt. #1. While in custody at MCJ, Plaintiff claims he was denied his medications and "thrown to the ground where Bill Ray Carroll stood on my back (until I defecated on

myself)." Plaintiff also claims Defendant Carroll threatened him by saying "I'll hurt you, boy." Plaintiff seeks $1,000,000.00 in damages. *Id*.

## *UNDISPUTED FACTUAL BACKGROUND*

In May, 2010, Plaintiff was an in-patient resident at a mental health hospital in Vinita, Oklahoma undergoing daily psychiatric evaluation related to a diagnosis of bipolar disorder. Plaintiff had been placed in the Vinita hospital by court order after pleading not guilty by reason of insanity to charges of possession of a controlled dangerous substance and possession of firearms after conviction or during probation. On May 11, 2010, Plaintiff was transported to McCurtain County Jail so that he could attend a court hearing following a 45 day evaluation in the Vinita hospital. At the time of his transport, Plaintiff's medication schedule included taking medication at one time in the morning, the afternoon and the evening.

During transport to McCurtain County, Plaintiff told the transport officer that it was time for his morning medication. The transport officer had a large Ziploc bag full of pills and she asked him if he knew which pills he was supposed to take. He answered in the affirmative and she handed him the entire bag and he took his own medication.

Plaintiff apparently was taken to court and then, following his court hearing, he was returned to the McCurtain County Jail to await transport back to Vinita. When the jail officials advised Plaintiff he was about to be transported, he told them he wanted his medications. Defendant Carroll advised Plaintiff he was not going to receive his medication while he was at the jail because they did not have a jail nurse present but that he would

2

receive it once he returned to Vinita. Plaintiff demanded that they call a nurse and stated, "you can give me my medicine or I'm going to sit here like a dumbass." Plaintiff admits from that point forward that he refused to cooperate with jailers.

Defendant Carroll jerked plaintiff up by his shirt and tried to place him on the ground so that he could handcuff him in order for him to be transported to Vinita. Plaintiff began resisting Defendant Carroll's efforts by pushing Defendant Carroll away from him. During the ensuing struggle, plaintiff admits that he tried to bite Defendant Carroll's hand. Two other individuals came to assist Defendant Carroll take the plaintiff to the ground, after which they were able to handcuff the plaintiff. Plaintiff testified that once he was on the ground, someone had a knee on his back to keep him down so they could handcuff him. Plaintiff admits he does not know who had their knee on his back.

While on the ground, Plaintiff defecated on himself. Plaintiff admits he was only on the ground for approximately one minute. After he was handcuffed, the officers helped plaintiff get up, set him down on a bench and then let him take a shower. Plaintiff claims following his shower, Defendant Carroll said, "I told you I'd hurt you, boy." To which Plaintiff responded by saying: "I'll tell you what, Billy. I'll see you out in the world, and we'll see if you can hurt me." Plaintiff asserts that Defendant Carroll then asked what plaintiff meant and asked if plaintiff was threatening him. Plaintiff says he responded by saying: "I don't give a damn if it's at the Wal-Mart shopping center and you've got your fat ass wife with you." Plaintiff also told Defendant Carroll "to get ready for a lawsuit." Following the shower and verbal exchange, plaintiff left cooperatively in the transport

vehicle. According to Plaintiff's deposition, the entire episode, from the time plaintiff refused to cooperate until he left the McCurtain County Jail for Vinita, lasted thirty to thirty-five minutes.

Plaintiff received his medication when he arrived in Vinita. The only medication plaintiff did not receive was what he generally took in the afternoon. Plaintiff did not suffer any problems or difficulties, either psychologically or physically, as a result of not getting his afternoon medication. Plaintiff contends , however, that Defendant Carroll aggravated a pre-existing back injury that he incurred during the 1980s and that, as a result, he now suffers from chronic back pain.

## *ANALYSIS*

**A.  Summary judgment standard**

Pursuant to Fed.R.Civ.P. 56, summary judgment is appropriate if there is no geniune issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); and *Kendall v. Watkins*, 998 F.2d 848, 850 (10th Cir. 1993). ". . . .the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S at 322.

To survive Defendant Carroll's motion for summary judgment, plaintiff must establish that there is a genuine issue of material fact. "When the moving party has carried its burden

under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 547, 586 (1986). If the record taken as a whole would not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' *Id.*, at 587. The evidence must be viewed in the light most favorable to the party opposing summary judgment. *Anderson*, *supra*; and *Garratt v. Walker*, 164 F.3d 1249, (10th Cir. 1998). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252.

**B. Excessive Force Claim**

Plaintiff brought this action pursuant to 42 U.S.C. § 1983. "Section 1983 provides an enforcement remedy for one who is deprived under color of state law of 'any rights, privileges, or immunities secured by the Constitution.'" *Trujillo v. Board of County Com'rs of Santa Fe County*, 768 F.2d 1186, 1189 (10th Cir. 1985). For a § 1983 complaint to be sufficient, a plaintiff must allege two prima facie elements: 1) the defendant deprived him of a right secured by the Constitution and laws of the United States; and 2) the defendant acted 'under color of law.' *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Plaintiff gives no explanation as which constitutional rights he was deprived of nor does he cite any case law in support of his claims. To the extent, however, that plaintiff appears to be alleging an excessive force claim, since he had not been convicted his claims arise under the Fourteenth Amendment of the United States Constitution. The Fourteenth

5

Amendment "Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Meade v. Grubbs*, 841 F.2d 1512, 1526-27 (10th Cir. 1988). "Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners." *Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005). But, in reality, it makes no difference whether plaintiff was a pretrial detainee or a convicted prisoner because the applicable standard is the same. *Id.*, quoting *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). When determining whether force was excessive within the meaning of the Fourteenth Amendment, courts examine three factors: "(1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the state actor. *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003) (quoting *Hannula v. City of Lakewood*, 907 F.2d 129, 131-32 (10th Cir. 1990). Similarly, whether force is excessive in violation of the Eighth Amendment depends upon the circumstances confronting the officer as well as the nature and amount of force applied in reaction. *Whitley v. Albers*, 475 U.S. 312, 321, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson v. McMillian*, 503 U.S. 1, 9-10, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) (citations omitted). In considering

plaintiff's claim, this court must consider two components: (1) an objective component, was the deprivation sufficiently serious; and, (2) a subjective component, did the official act with a sufficiently culpable state of mind? *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed. 271 (1991). The objective component of an excessive force claim is "contextual and responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8, 112 S.Ct. at 1000. On the other hand, "[t]he subjective component of an excessive force claim 'turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Giron v. Corrections Corp. of America*, 191 F.3d 1281, 1289 (10th Cir. 1999) (quoting *Whitley*, 475 U.S. at 320-21, 106 S.Ct. 1078). As the United States Supreme Court has held:

> whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

*Hudson*, 503 U.S. at 6-7, 112 S.Ct. at 999.

Here it is undisputed that the force in question was applied briefly and while the plaintiff was refusing to comply with lawful commands. Plaintiff admits he explicitly refused to cooperate by remaining seated when he was asked to go to a transport vehicle. Plaintiff also admits when Defendant Carroll attempted to pull him up off of the bench he was seated upon, he resisted the defendant's efforts to do so by physically pushing the defendant away. Plaintiff further admits that he attempted to bite Defendant Carroll to keep him from handcuffing him. It took three deputies to take the plaintiff to the ground and only

7

after he was placed on the ground were they able to handcuff him. Even if deputies placed a knee on defendant's back to gain control of the situation, a review of the entire incident leaves no doubt in this Court's mind that Defendant Carroll's actions comported with the general standards of decency in reaction to plaintiff's actions and that the force applied was applied in a good faith effort to maintain order and discipline, rather than maliciously or sadistically to cause harm. *Id.* The amount of force used appears to be the least amount necessary to gain control of the situation as it unfolded. As soon as the plaintiff was handcuffed, the officers helped the plaintiff to his feet and allowed him to take a shower before he was placed in the transport vehicle. Plaintiff simply has failed to establish that the defendant "acted maliciously and sadistically for the very purpose of causing harm rather than in a good-faith effort to maintain or restore discipline." *Mitchell v. Maynard*, 80 F.3d 1433, 1440 (10th Cir. 1996) (quoting *Hudson*, 503 U.S. 1, 6-7, 112 S.Ct. 995, 998-99, 117 L.Ed.2d 156 (1992)).

Moreover, the extent of injury the plaintiff suffered appears to be *de minimus*. While he asserts that the placing of a knee on his back caused him to defecate on himself, he has not submitted any evidence to establish that putting pressure on his back caused him to defecate. Further, plaintiff claims he suffered a back injury as a result of these events; however, plaintiff has not submitted any medical records to establish that he, in fact, injured his back during this brief encounter. He never complained at the time of the incident that his back was hurt. Plaintiff stated in his deposition that he has been receiving Oxycodone for approximately one year to deal with his back pain which he claims has gotten worse since

this incident. Plaintiff admits, however, that he hurt his back in the 1980s and that he has experienced ongoing problems since that initial injury. Plaintiff submitted findings from two MRIs, one taken on June 12, 1996 and one taken on October 13, 2010. Both MRIs show plaintiff has degenerative disc disease. Any injury plaintiff received on May 11, 2009, appears from the limited records supplied by plaintiff in opposition to the defendant's motion for summary judgment, to be an aggravation of a pre-existing condition. Plaintiff does not, however, allege that Defendant Carroll had any pre-existing knowledge of his prior back injuries or that he had degenerative disc disease. Assuming arguendo, however, that the altercation aggravated plaintiff's pre-existing condition, it is the defendant's actions, not the resulting injury, which are the focus of an Eighth Amendment claim. *See*, *Rodriguez v. Farrell*, 280 F.3d 1341, 1352-53 (11th Cir. 2002) (concluding officer did not use excessive force when he handcuffed plaintiff's arms behind his back, despite the fact that handcuffing led to eventual amputation of one arm, because officer did not know of plaintiff's preexisting injury) and *Estate of Larsen*, 511 F.3d 1255, 1260-61 (10th Cir. 2008) (emphasizing a suspect's refusal to cooperate is an important factor in finding the officer's use of force against suspect reasonable).

Based upon the totality of the circumstances, this Court finds Defendant Carroll was justified in using force to obtain plaintiff's compliance with his commands to get up so he could be transported back to Vinita. Furthermore, in light of the brief encounter, this Court finds the force used to gain control of plaintiff was not excessive and it was applied in a good

faith effort to maintain control over the plaintiff. Accordingly, plaintiff has failed to state a claim for denial of his Fourteenth Amendment rights.

## C. DENIAL OF MEDICAL CARE

Plaintiff complains that Defendant Carroll's refusal to provide him his midday dose of medications led to the entire altercation. Plaintiff admits, however, that missing this medication did not cause him any psychological or physical harm. In order for a violation of a convicted prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner "must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs." *Wilson v. Seiter*, 501 U.S. 294, 297-299 (1991). *See also*, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

Delay in medical care will result in an Eighth Amendment violation only if there has been deliberate indifference which results in substantial harm. *Easter v. Powell*, 457 F.3d 459, 463 (5th Cir. 2006). Plaintiff must produce some admissible evidence that he was substantially harmed which he has failed to do. Accordingly, Plaintiff has failed to state a claim for denial of his Eight Amendment rights in regard to his medical needs.

**ACCORDINGLY, and for the reasons stated herein, IT IS HEREBY ORDERED that:**

1. Defendant Carroll's Motion for Summary Judgment (Dkt. # 37) is hereby **GRANTED** and Plaintiff's civil rights complaint (Dkt. # 1) is hereby **dismissed** for failure to state a claim.

2.  A separate judgment shall be entered in favor of the defendants and against plaintiff.

3.  Plaintiff remains obligated to pay in monthly installments the **$350.00** filing fee incurred in this matter.

It is so ordered on this  5th   day of March, 2012.

James H. Payne
United States District Judge
Eastern District of Oklahoma